Vacated and remanded by published opinion. Judge KING wrote the majority opinion, in which Judge DUNCAN joined. Judge THACKER wrote an opinion concurring in part and dissenting in part.
OPINION
KING, Circuit Judge:
These habeas corpus proceedings on behalf of Justin Michael Wolfe are before us for the third time, and they arrive saddled with a protracted and eventful history. Most recently, in 2012, we affirmed the judgment entered in the Eastern District of Virginia vacating Wolfe’s 2002 state court convictions for capital murder and other crimes, and we remanded for further proceedings, leaving in place the district court’s remedial edict that Wolfe be retried or released.
In this appeal, respondent Harold W. Clarke, as Director of the Virginia Department of Corrections (hereinafter the “Commonwealth”), seeks relief from the district court’s “Order Enforcing Judgment.” Wolfe v. Clarke, No. 2:05-cv-00432 (E.D.Va. Dec. 26, 2012).[1] The court entered the challenged order upon ascertaining that the Commonwealth had not complied with the operative retry-or-release directive. As a consequence of the Commonwealth’s noncompliance, it was instructed to “release [Wolfe] unconditionally, free of all criminal proceedings on the charge of murder for hire of Danny Pe-trole and the drug charges that were previously tried in state court by the Commonwealth, within ten (10) days of the entry of this order.” Id. at 25.
Beyond mere release, however, the district court further proscribed the Commonwealth “from reprosecuting [Wolfe] on the charges originally tried herein in state court or any other charges stemming from [the] death of Danny Petrole which requires the testimony of Owen Barber in any form.” Order Enforcing Judgment 25-26. In support of its chosen remedy, the court concluded that the Commonwealth’s prosecutors had, on remand, improperly conducted themselves with respect to their key witness, Owen Barber. As a result, the prosecutors had “permanently crystalized” constitutional violations previously found to have tainted Wolfe’s trial, id. at 24, which in turn constituted extraordinary circumstances justifying a federal bar to his proposed retrial.
On January 3, 2013, we stayed, pending resolution of this appeal, the district court’s order. As explained below, the court accurately determined that the Commonwealth neglected to timely observe the retry-or-release directive. Though the court was correct to order Wolfe’s immediate release, it fashioned an overbroad remedy and thereby abused its discretion by precluding the Commonwealth from retrying Wolfe in a new proceeding. We therefore vacate the Order Enforcing Judgment and remand for the district court to enter a substitute order directing that Wolfe simply be released from the custody imposed as the result of his 2002 convictions.
I.
As described in our earlier decisions, a jury in Prince William County, Virginia, found Wolfe guilty in 2002 of the capital *280 murder of Danny Petrole, of using a firearm in the commission of a felony, and of conspiring to distribute marijuana. See Wolfe v. Johnson, 565 F.3d 140 (4th Cir.2009) (“Wolfe I”); Wolfe v. Clarke, 691 F.3d 410 (4th Cir.2012) {“Wolfe II ”). The theory of the prosecution was that, as a nineteen-year-old marijuana dealer, Wolfe hired his friend and fellow drug dealer, Owen Barber, to murder Petrole, who was a drug supplier. Barber, the admitted triggerman, was the only witness to testify concerning the “for hire” element of the murder-for-hire scheme. In exchange for Barber’s testimony, the Commonwealth dismissed its capital murder charge against him. Barber thus pleaded guilty and was sentenced to sixty years on a non-capital murder conviction, of which twenty-two years were suspended. On the basis of his murder conviction, Wolfe was sentenced to death. For his firearm and drug convictions, Wolfe received consecutive prison terms of three and thirty years, respectively.
A.
1.
In November 2005, after failing to obtain relief on direct appeal and in state post-conviction proceedings,„ Wolfe filed his 28 U.S.C. § 2254 petition in the Eastern District of Virginia. The district court promptly referred Wolfe’s petition to a magistrate judge for a report and recommendation. On December 14, 2005, while Wolfe’s petition was pending, Barber executed an affidavit repudiating his trial testimony and exculpating Wolfe from the murder-for-hire scheme. Barber’s affidavit prompted Wolfe to file an amended § 2254 petition, which is the operative “petition” in these proceedings. The petition maintained, inter alia, that the prosecution had curtailed Wolfe’s entitlement to due process by concealing material exculpatory evidence that should have been disclosed to his defense attorneys. The petition also alleged that Barber’s affidavit had sufficiently demonstrated Wolfe’s actual innocence to excuse any procedural default of his constitutional claims.
In April 2006, five months after executing the repudiatory affidavit, Barber sought to recant the statements he had made therein. In an unsworn handwritten letter, Barber insisted that he had testified truthfully in the 2002 trial, and that he had falsified his 2005 affidavit. In August 2007, the magistrate judge issued his report recommending dismissal of Wolfe’s § 2254 petition, in that the claims alleged therein were meritless and had been procedurally defaulted. On February 11, 2008, over Wolfe’s objections, the district court adopted the magistrate judge’s recommendation and dismissed the petition. Wolfe timely appealed that dismissal, and, by our decision of May 11, 2009, see Wolfe I, we vacated in part and remanded for further proceedings.
2.
On remand, the district court determined at the outset that Wolfe was entitled to an evidentiary hearing, and that, pursuant to Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), he had made a sufficient showing of actual innocence to bypass any procedural defenses that might be interposed to foreclose substantive consideration of his constitutional claims. During the evidentiary hearing conducted in November 2010, Barber testified, exculpated Wolfe, and his evidence was credited by the court. On July 26, 2011, the court ruled that the prosecutors in Wolfe’s trial had contravened his Fourteenth Amendment due process rights by (1) failing to disclose favorable and material evidence, contrary to Brady v. Maryland, 373 U.S. 83, 83 *281 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (2) allowing Barber to testify, despite having information indicating that his testimony was false, in violation of Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); and (3) striking a qualified venireman, as proscribed by Supreme Court precedent. The court therefore granted habeas corpus relief to Wolfe and specified that Wolfe’s “conviction and sentence” were vacated. Wolfe v. Clarke, 819 F.Supp.2d 538, 574 (E.D.Va.2011). On August 4, 2011, the Commonwealth filed a timely notice of appeal.
Thereafter, Wolfe moved the district court, pursuant to Rule 59 of the Federal Rules of Civil Procedure, to clarify whether the relief granted on his capital murder conviction also encompassed his firearm and drug convictions. On August 30, 2011, the court granted Wolfe’s clarification motion and entered one of the orders relevant to this appeal. See Wolfe v. Clarke, No. 2:05-cv-00432 (E.D.Va. Aug. 30, 2011) (the “Relief Order”).[2] The Relief Order explained that Wolfe was entitled to a new trial on all of the original charges, and it accorded the Commonwealth the option of either “providing] [Wolfe] with a new trial, or releasing] him unconditionally from custody” within 120 days. Id. at 2. On September 2, 2011, the Commonwealth filed a second notice of appeal, from the Relief Order and the Amended Judgment. Eleven days later, the Commonwealth moved the district court for a stay pending appeal, which the court granted on November 22, 2011. See Wolfe v. Clarke, 819 F.Supp.2d 574 (E.D.Ya.2011) (the “Stay Order”).[3] Wolfe cross-appealed, asserting that the district court erred in denying him relief on an additional, unadjudicated claim. By our Wolfe II decision, we affirmed the judgment of the district court.[4]
B.
1.
Our mandate in Wolfe II issued on September 7, 2012. That same day, Wolfe was transferred from the Sussex State Prison to the Prince William County Adult Detention Center, for a status hearing to be conducted in the state circuit court on *282 September 10, 2012. At that hearing, two of Wolfe’s federal habeas lawyers were appointed to represent him on the original state charges, and a bond hearing was set for September 14, 2012.[5] The next day, the Commonwealth’s Attorney and his assistant, along with one of the primary investigating officers, Detective Sam New-some, interviewed Barber at the Augusta Correctional Center. During the interview, which was recorded without Barber’s knowledge, those three officials sought to ascertain how Barber would testify at Wolfe’s retrial. They suggested to Barber that, because his testimony in the federal habeas proceedings was inconsistent with his trial testimony, he had breached his plea agreement with the Commonwealth. The prosecutors then advised Barber that he could face prosecution for perjury, plus reinstatement of his original capital murder charge, which potentially carried the death penalty.
Not long thereafter, the Commonwealth’s Attorney and his assistant re-cused themselves from Wolfe’s retrial and requested the appointment of Raymond Morrogh, the Commonwealth’s Attorney for Fairfax County, as Special Prosecutor. Morrogh was appointed, and he represented the Commonwealth at the September 14, 2012 hearing, where Wolfe was denied bond. On that occasion, the defense lawyers asserted that only thirty-six days remained for the Commonwealth to retry Wolfe. The Commonwealth agreed to a retrial beginning on October 15, 2012. On the heels of the bond hearing, Wolfe requested the circuit court to disqualify the Special Prosecutor.
In the meantime, on October 1, 2012, a Prince William County grand jury returned new indictments against Wolfe, charging him with six additional offenses arising from the events underlying Wolfe’s original charges. The retrial, then, was to encompass the original charges plus the following:
• capital murder by order of a person engaged in a continuing criminal enterprise (“CCE”);
• use of a firearm in the commission of a murder;
• leading a CCE to distribute between $100,000 and $250,000 worth of marijuana in a twelve-month period;
• leading a CCE to distribute more than $250,000 of marijuana in a twelvemonth period;
• first degree felony murder of Danny Petrole during commission of a robbery or attempted robbery; and
• use of a firearm in the commission of a robbery or attempted robbery.
See J.A. 229-30. On that same date, the Commonwealth moved in state court for a continuance of the October 15 retrial, asserting that the 120-day period had not begun to run until our mandate issued on September 7, 2012, and, thus, that the 120 days would not expire until January 5, 2013. Consistent with that view, the Commonwealth requested that the retrial commence the first week of January 2013. The continuance motion was granted on October 3, 2012, but a retrial date was not set.
On October 31, 2012, the circuit court conducted a hearing on, inter alia, Wolfe’s motion to disqualify the Special Prosecutor. Barber was called to testify at that hearing, and he invoked his Fifth Amendment privilege against self-incrimination. *283 The court accepted Barber’s assertion of the privilege and did not seek to compel his testimony. Thereafter, the court scheduled Wolfe’s retrial for January 2, 2013.[6]
Meanwhile, beginning in November 2012, proceedings commenced in federal court that overlapped to some extent with the pretrial litigation in the circuit court. Specifically, on November 16, 2012, Wolfe filed a motion to enforce judgment, asserting that the Commonwealth had neither released him unconditionally nor provided him with a new trial within 120 days of the Relief Order. The Commonwealth opposed the motion, contending that Wolfe had already been released unconditionally, and that, by conducting the bond hearing on September 14, 2012, the Commonwealth had effectively commenced his retrial within the 120-day period. That period, the Commonwealth maintained, had in any event been reset to 120 days by the November 22, 2011 Stay Order, and had not begun to elapse until September 7, 2012, upon issuance of our mandate.
2.
On December 4, 2012, based primarily on the Barber interview, Wolfe filed a motion to dismiss in the circuit court, contending that, by threatening Barber with the death penalty, the prosecutors had engaged in “gross prosecutorial misconduct” sufficiently severe and violative of due process to fatally undermine all the state criminal charges lodged against Wolfe.[7] See J.A. 405-20. Two days later, Wolfe brought the Barber interview to the district court’s attention, by way of his written reply on the motion to enforce judgment. Wolfe also offered to provide a transcript of the Barber interview “to the Court at its request.” Id. at 285. The following day, the district court directed Wolfe’s counsel to file “any additional information or transcripts concerning the meeting between the original prosecutors in this case and Mr. Barber on September 11, 2012.” Id. at 290. Acting on its own initiative, the court also ordered the Commonwealth to show cause why the Barber interview “does not constitute extraordinary circumstances warranting the Court to order [Wolfe’s] immediate release and bar current and future prosecutions of Wolfe on all charges related to the death of Danny Petrole and drug conspiracy crimes.” Id. at 289-90. The Commonwealth responded to the show cause order on December 12, 2012, asserting that the district court possessed no authority to prohibit any current or future state prosecutions of Wolfe, and that, even were the situation otherwise, nothing had occurred in the Barber interview to justify any such action.
The district court conducted an eviden-tiary hearing on December 13, 2012, concerning the show cause order. On that occasion, Barber’s lawyer advised that *284 Barber would not testify in Wolfe’s retrial, instead relying on his Fifth Amendment privilege. The court itself called Barber as a witness at the hearing, for the purpose of establishing that the September 11, 2012 interview had been recorded without his knowledge. Barber responded to the court’s questions, confirming that he had been unaware that the encounter was recorded.
3.
On December 26, 2012, the district court entered its Order Enforcing Judgment, concluding that the Commonwealth had not satisfied either compliance option specified in the Relief Order, that is, Wolfe had not been released unconditionally, and he had not been retried within 120 days of the Relief Order. In discussing the appropriate remedy for the violation, the court surmised that “had the content of [Wolfe’s] Motion to Enforce Judgment been strictly limited to the Commonwealth’s violation of the deadline set in this case, ... [t]he Court would order Wolfe’s release, but he would be subject to rearrest and reprose-cution by the Commonwealth.” Order Enforcing Judgment 16. Moving on to the matter of the Barber interview, the court determined that “extraordinary circumstances” had been shown warranting a bar to Wolfe’s retrial. More specifically, the court found that the Barber interview “incurably frustrated the entire purpose” of the federal habeas corpus proceedings, and “permanently crystalized” the constitutional violations infecting Wolfe’s trial, causing Barber to be legally unavailable to testify in a retrial. Id. at 24.
Consequently, the district court ordered Wolfe’s release within ten days and barred the Commonwealth from reprosecuting Wolfe on the original charges “or any other charges stemming from [the] death of Danny Petrole which requires the testimony of Owen Barber in any form.” Order Enforcing Judgment 25-26. The Commonwealth immediately appealed, moving to stay the Order Enforcing Judgment. On January 3, 2013, the district court denied the Commonwealth’s request for a stay pending appeal. Later that same day, however, on the Commonwealth’s motion, we entered our own stay and expedited this appeal. We possess jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a).[8]
EL
We potentially face two rather significant issues. First, we must assess whether the Commonwealth complied with the Relief Order. If the Commonwealth failed to do so, we must then decide whether the district court abused its discretion in barring Wolfe’s retrial.
On the first issue, we review a district court’s interpretation of its own orders for abuse of discretion. Home Port Rentals, Inc. v. Ruben, 957 F.2d 126, 131 (4th Cir.1992). In that regard, “we are obliged to accord substantial deference to a district court’s interpretation of its own judgment.” ABT Bldg. Prods. Corp. v. Nat’l Union Fire Ins. Co., 472 F.3d 99, 113 (4th Cir.2006). Indeed, “to sustain appellate review, district courts need only adopt a reasonable construction of the terms contained in their orders.” JTH Tax, Inc. v. H & R Block E. Tax Serv., Inc., 359 F.3d 699, 706 (4th Cir.2004).
If the Commonwealth falls short on the compliance issue, our review of the district court’s bar to Wolfe’s retrial is also *285 for abuse of discretion. D'Ambrosio v. Bagley, 656 F.3d 379, 390 (6th Cir.2011). Where applicable, Congress has directed the courts to dispose of habeas corpus petitions “as law and justice require.” 28 U.S.C. § 2243.[9] Congress’s directive constitutes, in a proper case, “an authorization to adjust the scope of the writ in accordance with equitable and prudential considerations.” Danforth v. Minnesota, 552 U.S. 264, 278, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008). Because “habeas corpus is, at its core, an equitable remedy,” a district court is vested with substantial discretion to appropriately redress any violation of an order granting habeas corpus relief. Schlup v. Delo, 513 U.S. 298, 319, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).
III.
A.
In view of the foregoing recitation, we turn first to the Commonwealth’s assertion that it complied with the district court’s Relief Order, which required that Wolfe be retried or released within 120 days. Those contentions — that Wolfe was both released and retried — were considered and rejected in the Order Enforcing Judgment. The court’s rulings were predicated primarily on its explanation of its intentions with respect to the Relief Order and the Stay Order. As explained below, the district court did not abuse its discretion in ruling that the Commonwealth neglected to satisfy either compliance option.
1.
At the threshold, the Commonwealth’s position — that Wolfe has been both released and retried — fails to pass muster. By specifying the compliance options in the disjunctive, the district court presented the Commonwealth with a choice: it could either provide Wolfe with a new trial or unconditionally release him from custody. The Commonwealth asserts on appeal, rather counterintuitively, that it has satisfied both options.
First, the Commonwealth maintains that, at least since Wolfe’s September 14, 2012 bond hearing, his status is that of a pretrial defendant who has been denied bond. The Commonwealth thus posits that Wolfe was unconditionally released. The Commonwealth’s theory fails to take into account the purpose of a new-trial contingency in the habeas setting, which is to delay actual release of the successful petitioner, thus permitting the state authorities to remedy the constitutional defects and retain the petitioner in confinement. See Hilton v. Braunskill, 481 U.S. 770, 775, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987) (“[Tjhis Court has repeatedly stated that federal courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court.”).
By its Relief Order, the district court did not direct Wolfe’s immediate release. It instead accorded the Commonwealth the options of retrying Wolfe within 120 days or unconditionally releasing him. An evaluation of whether the Commonwealth has complied with either directive requires an interpretation of the court’s *286 prior orders, the best source for which is the court itself. As it explained,
[i]n presenting the option of releasing the Petitioner “unconditionally” from custody, the Court used the word “unconditionally” in its traditional and widely understood] context: “Not limited by a condition; not depending on an uncertain event or contingency; absolute.” Black’s Law Dictionary (9th ed. 2009). Under this meaning of the word “unconditional,” it is self-evident that releasing Petitioner from the custody of the Virginia Department of Corrections to Prince William County for the purposes of retrial did not constitute releasing Petitioner “unconditionally from custody.”
Order Enforcing Judgment 8.
The foregoing explanation is not an unreasonable one, and we are unable to disturb it. A commonsense reading of the Relief Order is that it obliged the Commonwealth to either release or retry Wolfe within 120 days. Because Wolfe has not been unconditionally released, we turn to the second compliance option and gauge whether Wolfe has been retried.[10]
2.
The Commonwealth’s other option for compliance with the Relief Order was to provide Wolfe with a new trial “within one-hundred and twenty (120) days of the date of [the Order].” Relief Order 2. The Commonwealth insists that it was not obliged to actually complete a retrial within 120 days. That is, it was not necessary for a verdict to be returned in the state court, or even that a jury be selected, so long as proceedings leading to a retrial had commenced in the circuit court. In this regard, the Commonwealth emphasizes that the circuit court had conducted a bond hearing on September 14, 2012, and that other pretrial proceedings (such as motions to dismiss the indictments and disqualify the prosecutor) were ongoing until the Order Enforcing Judgment was entered. The Commonwealth thus maintains that its obligation to “provide [Wolfe] with a new trial” was thereby satisfied. In the alternative, the Commonwealth suggests that the 120-day retrial period did not begin to run until the issuance of our mandate in Wolfe II, on September 7, 2012.
Each of the foregoing contentions were considered and rejected by the district court, predicated on its interpretations of the orders on appeal. With regard to whether the 120-day retrial period ran from the issuance of our mandate, the court explained that
the stay [entered on November 22, 2011] pending the Commonwealth’s appeal of the Court’s Amended Judgment paused or halted the 120-day deadline imposed by the Court to provide Wolfe a new trial. When that stay was lifted [on September 7, 2012], the deadline clock resumed where it left off when the stay *287 was granted and there were 36 days remaining. On Saturday, October 13, 2012, the 120 days given to the Commonwealth to provide Wolfe with a new trial expired. Because the deadline fell on a weekend, the deadline for retrial moved to Monday, October 15, 2012.
Order Enforcing Judgment ll.[11] In response to the second contention, that the obligation to provide Wolfe with a new trial was satisfied by the commencement and conduct of pretrial proceedings in the circuit court, the Order Enforcing Judgment specified that the retrial had to be completed — and not merely commenced— within the prescribed period. More precisely, the court explained that
it was certainly the objective of the Court in issuing [the Relief Order] that [Wolfe] would be either promptly retried or relieved of the strictures imposed by his constitutionally flawed conviction and it was certainly the intention of the Court that in providing [Wolfe] a new trial within 120 days, said trial actually occur within that period of time.
Id. at 14 (quotation marks and alterations omitted).
The Commonwealth complains that, evaluated together, the district court’s interpretation of its prior directives left the prosecution, after the Wolfe II mandate, with only thirty-six days to complete a capital murder trial. According to the Commonwealth, the Order Enforcing Judgment was a “prejudicial, revisionist rewording of [the] judgment.” Br. of Appellant 24. That characterization fails to recognize that, in the referenced order, the district court explained the meaning of its earlier orders as intended upon entry, without regard for post-judgment events. It was the Commonwealth that sought (and now seeks from this Court) a recasting of the district court’s rulings on the basis of subsequent procedural developments. See Capps v. Sullivan, 13 F.3d 350, 353 (10th Cir.1993) (remanding for district court “to give effect to its original understanding of the order granting [ha-beas relief]” (emphasis added)).
Notwithstanding the foregoing, the Commonwealth may well be correct that completing a retrial of a complex death penalty case within thirty-six days was a practical impossibility. Indeed, that fact alone may have been sufficient to justify an extension of the retrial period. The Commonwealth did not, however, return to court seeking either a clarification or an extension.
We also recognize that the district court’s explanation of its 120-day period was a highly restrictive one, and that, in the absence of a thorough explanation, the court’s construction of that directive could be viewed as erroneous. By way of example, the court counted against the Commonwealth an aggregate of eighty-four *288 days during the pendency of the Wolfe II appeal. That is, the period from the August 30, 2011 Relief Order through the November 22, 2011 Stay Order was counted against the 120-day retrial period, notwithstanding the Commonwealth’s timely filing, on September 2, 2011, of its second notice of appeal. Furthermore, the district court did not consider that the circuit court, subsequent to the Wolfe II mandate, spent a substantial period of time addressing motions interposed by Wolfe. Even the federal Speedy Trial Act, which the district court administers on a regular basis, excludes such periods of time. See 18 U.S.C. § 3161(h) (excluding from speedy trial calculations, inter alia, “delay resulting from any pretrial motion”).
Additionally, before concluding that the Commonwealth had failed to comply with the Relief Order, the district court acknowledged that there is a “lack of clear controlling case law on a number of issues.” Order Enforcing Judgment 7. In these circumstances, we are obliged to provide a modicum of clarity: When a district court awards habeas relief, it is preferable that its order include language ensuring that the respondent will suffer no prejudice by exercising its right of appeal. See, e.g., Tice v. Johnson, 3:08-cv-00069, 2009 WL 4035905 (E.D.Va. Nov. 19, 2009) (“The writ of habeas corpus will be GRANTED if the Commonwealth of Virginia does not commence the retrial ... within 120 days of the date of entry of this judgment should appeal not be taken, or within 120 days after the final resolution of any appeal (including a petition for a writ of certiorari) if an appeal is taken.”).
At this stage of these proceedings, however, with the Commonwealth having foregone any opportunity to obtain clarification from this Court or the district court, it can hardly claim surprise.[12] Furthermore, the district court has explained its intentions with respect to the Relief Order and the Stay Order, and we are inclined to credit those explanations. Because the Commonwealth failed to either retry or release Wolfe within 120 days, we turn to the remedy for that transgression.
B.
The Commonwealth contends that the district court abused its discretion in barring Wolfe’s retrial. Though we reiterate that a federal habeas court possesses substantial discretion in fashioning an appropriate remedy, preventing the retrial of a state criminal case is the strongest of medicine. And it is a measure that should be utilized with the utmost restraint, only in the most extraordinary of circumstances. See Gilliam v. Foster, 75 F.3d 881, 905 (4th Cir.1996) (en banc) (“Equitable federal court interference with ongoing state criminal proceedings should be undertaken in only the most limited, narrow, and circumscribed situations.”). Such limited and narrow circumstances are simply not present here. We are therefore constrained to conclude, as explained below, that the district court abused its discretion in barring Wolfe’s retrial.
1.
In support of its chosen remedy, the district court correctly recognized that the award of an unconditional writ does not, in and of itself, preclude the authorities from *289 rearresting and retrying a successful habe-as petitioner. As the court acknowledged,
[i]t is generally recognized that a violation of a court’s directive to retry a habeas petitioner within a certain amount of time would permit the court to order the prisoner’s release, however, “the granting of an unconditional writ in this circumstance will not, itself, generally preclude the government from rearresting and retrying the prisoner.”
Order Enforcing Judgment 15 (quoting Federal Habeas Manual § 13:10 (May 2010)). The court, however, identified an exception to the general rule, namely, that “in extraordinary circumstances ... a ha-beas court may forbid reprosecution.” Id. (citing Satterlee v. Wolfenbarger, 453 F.3d 362, 370 (6th Cir.2006)).
In detecting the presence of extraordinary circumstances here, the district court explained that the conduct of the prosecutors — in particular, their conduct during the September 11, 2012 Barber interview — “sp[oke] to a continuing pattern of violating [Wolfe’s] right to use Brady and Giglio evidence, which the court attempted to remedy through its habeas decree.” Order Enforcing Judgment 19. At the core of the court’s analysis was its belief that the prosecutors had “incurably frustrated the entire purpose” of habeas corpus and had “permanently erystalized” the constitutional violations by “scarfing] Barber into invoking his Fifth Amendment right to avoid self-incrimination.” Id. at 24.
The district court’s conclusion concerning the availability of Barber’s testimony at a retrial, however, is speculative. As an initial matter, Barber could decide on his own to testify, and — based on his track record — such evidence might provide support for either side.[13] And, under a proper grant of immunity, Barber’s testimony may well be compelled. See Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) (holding that Fifth Amendment privilege may be supplanted and witness compelled to testify by proper grant of immunity). Alternatively, the state trial court, by way of example, could determine that a waiver of Barber’s Fifth Amendment privilege has already been made; it could authorize the evidentiary use of Barber’s prior statements in one form or another; or it might craft any number of other remedies. Put simply, the task of conducting Wolfe’s retrial is for the state trial court, and it is not for us to express a view on how that court should manage its affairs. We are confident that the retrial will be properly handled, and, if convictions result, that the appellate courts will perform their duties.
The district court also speculated that the Barber interview served to deprive Wolfe’s defense of a credible trial witness, and thereby abridged Wolfe’s due process rights. See Order Enforcing Judgment 24 (citing United States v. Saunders, 943 F.2d 388, 392 (4th Cir.1991) (“Improper intimidation of a witness may violate a defendant’s due process right to present his defense witnesses freely if the intimidation amounts to substantial government interference with a defense witness’ free and unhampered choice to testify.” (internal quotation marks omitted))). Like other constitutional issues that may arise in a post-habeas retrial, however, contentions relating to Barber’s alleged intimidation by the prosecutors are yet to be exhausted in the state court system. See Pitchess v. *290 Davis, 421 U.S. 482, 95 S.Ct. 1748, 44 L.Ed.2d 317 (1975) (alleged post-habeas Brady violation subject to state court exhaustion). Indeed, Wolfe has already raised that precise issue before the circuit court in his yet-unresolved post-Wolfe II motion to dismiss the indictments. By barring Wolfe’s retrial, the district court has deprived the circuit court of the opportunity to address that motion. Notably, in the event Wolfe is acquitted, any such issues would be moot. And, should Wolfe be again convicted, the state court system might vindicate him on appeal. Failing that, Wolfe’s due process claim with respect to the Barber interview could, at the proper time, constitute a separate ground for federal habeas corpus relief.
At the end of the day, any scenario presenting circumstances sufficiently extraordinary to warrant federal interference with a State’s reprosecution of a successful § 2254 petitioner will be extremely rare, and will ordinarily be limited to situations where a recognized constitutional error cannot be remedied by a new trial. See, e.g., Blackledge v. Perry, 417 U.S. 21, 31, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) (holding that vindictive prosecution could contravene due process and justify bar to retrial); Barker v. Wingo, 407 U.S. 514, 522, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (concluding that dismissal may be appropriate remedy for Sixth Amendment speedy trial violation); Gilliam, 75 F.3d at 881 (barring state retrial on double jeopardy grounds).[14]
Put succinctly, the constitutional claims for which Wolfe was awarded habeas corpus relief are readily capable of being remedied in a new trial. Our resolution of the Wolfe II appeal never contemplated the possibility of a retrial bar, and we expected a trial — if that option were pursued — to occur within a reasonable time. The resolution of criminal proceedings on their merits, before the public eye, is of critical importance to our system of justice. And it has long been settled that “[a]n indictment returned by a legally constituted and unbiased grand jury, ... if valid on its face, is enough to call for trial of the charge[s] on the[ir] merits.” Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956) (footnote omitted). We emphasize, however, that Wolfe, like any accused — as well as the Commonwealth — is entitled to a fair trial. That very proposition is what the Wolfe II decision is all about. As has been emphasized, “[a] murder trial — indeed any criminal proceeding — is not a sporting event.” Giles v. Maryland, 386 U.S. 66, 102, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967) (Fortas, J., concurring).
The district court, in its Order Enforcing Judgment, relied on decisions where a bar to retrial was approved even though the constitutional errors could have been thereby remedied. See Satterlee, 453 F.3d at 370 (barring retrial deemed appropriate “when the state inexcusably, repeatedly, or otherwise abusively fails to act within the prescribed time period or if the state’s delay is likely to prejudice the petitioner’s ability to mount a defense at trial” (internal quotation marks omitted)); Capps, 13 F.3d at 350 (barring retrial appropriate where state neither retried petitioner nor sought stay of habeas writ). Although we do not exclude the possibility that a federal habeas court — in an ex *291 tremely rare and unique circumstance— might proscribe a state court retrial even though the constitutional violation could be thereby remedied, we are unwilling to embrace the principles of Capps or Satter-lee. In the absence of extraordinary circumstances, the proper disposition is generally, as the district court recognized, the release of a successful habeas petitioner, subject to rearrest and retrial.[15]
IV.
Here, of course, the district court was correct to order Wolfe’s “release” on the original charges, though such action did not actually free him from custody. As we have explained, Wolfe is facing multiple indictments in Prince William County, and he has been rearrested and denied bail. All that remains to effect Wolfe’s release in compliance with the alternatives contemplated by our Wolfe II decision (and by the district court in its grant of relief) is for the Commonwealth to expunge Wolfe’s 2002 criminal convictions and to take any and all additional steps necessary to nullify any material adverse legal consequences attendant to those convictions. Subsequent to or contemporaneously therewith, the Commonwealth may retry Wolfe on the original charges together with the new charges, in accordance with such plan and schedule that the state circuit court may devise.
Pursuant to the foregoing, we vacate the district court’s Order Enforcing Judgment and remand with instructions that the court enter a substitute order directing that Wolfe be released from the custody imposed as the result of his 2002 convictions, and, further, that those convictions be expunged and their legal effects nullified consistently with Wolfe II and this opinion. The order on remand shall be without prejudice to a retrial of the original charges against Wolfe, and it shall not preclude the conduct of such other and further proceedings in the state or federal courts as may be appropriate.

VACATED AND REMANDED

. The Order Enforcing Judgment is found at J.A. 510-35. (Citations herein to "J.A. -” refer to the contents of the Joint Appendix filed by the parties in this appeal.)

. On August 30, 2011, the district court also entered an Amended Judgment containing substantially identical disposition terms as the Relief Order. These documents are found at J.A. 91-93.

. A brief comment is warranted concerning the two notices of appeal filed by the Commonwealth in Wolfe II. Generally (Continued) speaking, a duly filed notice of appeal deprives a district court of jurisdiction over all issues relating to the subject matter thereof. See In re Grand lury Proceedings Under Seal, 947 F.2d 1188, 1190 (4th Cir. 1991). An exception to that general proposition is recognized when a district court elects “to proceed as to matters in aid of the appeal.” Id. A court may render such aid, for example, by resolving a motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure to alter or amend the judgment being appealed, see Fed. R.App. P. 4(a)(4)(A)(iv) (providing in addition that filing of Rule 59(e) motion resets time allotted all parties to submit notices of appeal), or by addressing in the first instance a motion for stay pending appeal, see Fed. R.App. P. 8(a)(1)(A). Both of those events occurred in Wolfe II, culminating in, respectively, the Relief Order with accompanying Amended Judgment, and the Stay Order.

.Our affirmance in Wolfe II of the Relief Order and Amended Judgment was predicated on one sub-part of Wolfe’s Brady claim, that is, the Commonwealth's failure to disclose the written police report of Prince William County Detective Sam Newsome, documenting that Newsome had advised Barber that he could avoid the death penalty by implicating Wolfe. Because Wolfe was entitled to relief under § 2254 on that sub-claim, we had no reason to review the Commonwealth’s assignments of error regarding the other grounds for relief, or to consider Wolfe's cross-appeal. See Wolfe II, 691 F.3d at 416-17.

. When it became clear that the Commonwealth intended to proceed with a retrial of Wolfe, his habeas counsel successfully moved to withdraw from their representation of him on the original state charges. They were replaced by the Regional Capital Defender, who presently represents Wolfe in the state criminal proceedings.

. On this record, it is not clear when and how Wolfe’s lawyers learned of the Barber interview. At least as early as the October 31, 2012 hearing, however, they were aware of Barber's apparent intention to invoke the Fifth Amendment in connection with Wolfe's retrial, and they knew that such invocation was related to Barber’s interview by the prosecutors.

. At the oral argument of this appeal, the Commonwealth's lawyer represented that the circuit court elected to defer ruling on Wolfe's motion to dismiss the indictments on the basis of, inter alia, the Barber interview. According to the Commonwealth, the circuit court was of the view that the motion was premature because Barber has not yet invoked the Fifth Amendment and declined to testify in Wolfe’s retrial. The motion to dismiss thus remains pending in the circuit court.

. In connection with the entry of our January 3, 2013 stay pending appeal, we directed the parties to file regular reports on the status of the related state court proceedings. The most recent status report indicates that a trial date remains unscheduled.

. More fully, a court considering an application for habeas corpus relief "shall summarily hear and determine the facts, and dispose of the matter as law and justice require.” 28 U.S.C. § 2243. Notably, the § 2243 standard only applies when deference to a state court's adjudication of the merits of a habeas corpus claim is not mandated by the Antiterrorism and Effective Death Penalty Act. See Johnson v. Thurmer, 624 F.3d 786, 791 (7th Cir.2010). Because this appeal does not implicate the merits of a habeas claim, there is no state court adjudication to which we would defer.

. The Commonwealth also makes a related, though necessarily distinct, assertion that the vacatur of Wolfe's convictions deprived the district court of jurisdiction. Upon reviewing this issue de novo, see United States v. Poole, 531 F.3d 263, 270 (4th Cir.2008), we conclude that the court possessed jurisdiction to enforce its judgment. Because Wolfe was in custody when the original petition was filed, the jurisdictional contention is really a mootness argument that is foreclosed by Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968) (challenge to conviction not rendered moot by habeas petitioner’s unconditional release, because petitioner suffers from "collateral consequences,” including disenfranchisement, ineligibility for jury duty, and disqualification from elected office). See also Maleng v. Cook, 490 U.S. 488, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989) (Carafas rested "on the fact that the petitioner had been in physical custody under the challenged conviction at the time die petition was filed”).

. It is apparent that the Commonwealth was aware, as early as September 13, 2011, that the district court could deem the 120-day retrial period to have run concurrently with the appeal in Wolfe II. In a memorandum filed that day in support of its motion for a stay pending appeal, the Commonwealth assumed that the 120-day period had already begun, opining that
[i]n the absence of a stay, the Order would take effect and the Commonwealth would be either burdened with a new capital trial or required to set Wolfe free without a trial. In either instance, the Director would be prevented from exercising his right of appeal.
J.A. 113. The subsequent Stay Order seems to have been based upon the same assumption, see Wolfe v. Clarke, 819 F.Supp.2d at 583 (noting that, without a stay, the 120-day period would expire before the Commonwealth's reply brief was due to this Court in Wolfe II). The Commonwealth was therefore cognizant of the 120-day issue during the pendency of the Wolfe II appeal, yet failed to bring it to our attention.

. In Williams v. Netherland, a decision relied on by the Commonwealth, an issue similar to that presented here was avoided when the Commonwealth’s Attorney in that case did what should have been done here: He returned to the habeas court, in advance of the court-ordered deadline, and requested an extension of time. See No. 3:96-cv-00529 (E.D.Va. Nov. 14, 2002).

. The district court apparently believed it "unlikely that the Commonwealth would grant immunity to Barber so that he could provide testimony to exonerate [Wolfe].” Order Enforcing Judgment 25 n.6. Nevertheless, the Commonwealth asserts that it has offered Barber immunity for his truthful testimony at trial. Br. of Appellant 35.

. There are limited situations where a state criminal retrial could properly be barred by a habeas court on the basis of a constitutional deprivation. See generally 2 Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice and Procedure § 33.2 (identifying decisions involving, inter alia, double jeopardy, insufficient evidence, ex post facto violation, and unconstitutional statute).

. The Commonwealth alternatively contends that the retrial bar was foreclosed by Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and the Anti-Injunction Act, 28 U.S.C. § 2283. Pursuant to Younger, a federal court "may intervene in state criminal proceedings, either by way of declaratory relief or by injunction, only when there has been a 'showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief.’ " Gilliam, 75 F.3d at 903 (quoting Younger, 401 U.S. at 54, 91 S.Ct. 746). The Anti-Injunction Act provides, in pertinent part, that
[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.
28 U.S.C. § 2283. Because the district court abused its discretion in barring Wolfe from being retried in state court, we need not reach or address the Commonwealth’s contentions regarding the principles of Younger and the Anti-Injunction Act.