# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30506

United States Court of Appeals
Fifth Circuit

**FILED**
June 12, 2015

Lyle W. Cayce
Clerk

ALBERT WOODFOX,

      Petitioner–Appellee,

versus

BURL CAIN, Warden, Louisiana State Penitentiary; James Caldwell,

      Respondents–Appellants.

Appeal from the United States District Court
for the Middle District of Louisiana

Before SMITH, ELROD, and HIGGINSON, Circuit Judges.

JERRY E. SMITH, Circuit Judge.

In 2013, the district court *a quo* granted Albert Woodfox's petition for writ of habeas corpus on the ground of racial discrimination in the selection of the foreperson of the grand jury. This court affirmed and, on remand, the district court, on June 8, 2015, entered an unconditional writ releasing Woodfox and prohibiting retrial, and it declined to stay its order. The state moves for an emergency stay of the release pending appeal. We granted a three-day stay to receive briefing and to consider the matter fully. We now grant the motion for stay of the order for the duration of the appeal on the merits.

No. 15-30506

I.

Woodfox has been before this court many times through the decades. The district court originally granted him federal habeas relief in 2008 on the ground of ineffective assistance of counsel, ordering the state either to retry him within 120 days or to dismiss the indictment. *See Woodfox v. Cain,* No. 06-789-JJB-RLB (M.D. La. Sept. 25, 2008), ECF No. 50. Although there is a presumption that a prisoner who has been granted habeas relief is entitled to release from custody,[1] this court found that presumption rebutted and, under Federal Rule of Appellate Procedure 23(d), granted an emergency stay of release pending appeal. *See Woodfox v. Cain*, 305 F. App'x 179, 181–82 (5th Cir. 2008) (per curiam).

On review of the merits, this court vacated the judgment based on the standard of review mandated by the Antiterrorism and Effective Death Penalty Act of 1996 and "remand[ed] for resolution of the only remaining issue relating to the [allegedly racially discriminatory] selection of the grand jury foreperson." *Woodfox v. Cain*, 609 F.3d 774, 817–18 (5th Cir. 2010). The district court granted habeas relief on that ground; this court affirmed and "remand[ed] for further proceedings consistent with this opinion." *See Woodfox v. Cain*, 772 F.3d 358, 383 (5th Cir. 2014), *petition for cert. filed* (Apr. 27, 2015) (No. 14-1288). After remand, the district court again ordered Woodfox released.[2]

Under Rule 23(d), "[a]n initial order governing the prisoner's custody or

---

[1] *See Hilton v. Braunskill*, 481 U.S. 770, 772 (1987) (deciding "what factors [Federal Rules of Appellate Procedure 23(c) and 23(d)] allow a court to consider in determining whether to release a state prisoner pending appeal of a district court order granting habeas relief").

[2] *See Woodfox v. Cain*, No. 06-789-JJB-RLB, 2015 WL 3549787, at *16 (M.D. La. June 8, 2015).

2

release . . . continues in effect pending review unless for special reasons shown to the court of appeals or the Supreme Court, or to a judge or justice of either court, the order is modified or an independent order regarding custody, release, or surety is issued."[3]  The initial order releasing Woodfox was stayed in 2008 "pending the State's appeal of the grant of habeas relief."  *See Woodfox*, 305 F. App'x at 182.  By petitioning for *certiorari*, the state continues to seek review of the grant of habeas relief, albeit a grant on a ground different from that used in 2008.

Rule 23(d) plainly limits the entities that can modify an initial order or issue an independent order regarding custody to "the court of appeals or the Supreme Court, or to a judge or justice of either court."  Although the district court purported to act pursuant to Rule 23(c),[4] it may have impermissibly modified its initial order from 2008 or entered an independent one.[5]  Because the parties have not briefed whether Rule 23(d) prohibits the district court's

---

[3] *See also* Supreme Court Rule 36, previously numbered Rule 49, which was the model for FRAP 23.  FED. R. APP. P. 23 cmt. d.  Rule 36 states that "[a]n initial order respecting the custody or enlargement of the prisoner . . . shall continue in effect pending review in the court of appeals and in this Court unless for reasons shown to the court of appeals, this Court, or a judge or Justice of either court, the order is modified or an independent order respecting custody, enlargement, or surety is entered."

[4] *See Woodfox*, 2015 WL 3549787, at *1, *11, *15, *16 n.8.

[5] *See Elvik v. Bunce*, No. 3:04-CV-00471-GMN, 2014 WL 2803447, at *2 (D. Nev. June 19, 2014) ("[T]he Court is presented with a habeas petitioner's request to modify the Court's initial custody determination. This Court must defer to the Ninth Circuit regarding the question of any change to petitioner's custody status in accordance with FRAP 23(d)."); *Christian v. Frank*, No. CV 04-00743DAE-LEK, 2010 WL 1064732, at *4 (D. Haw. Mar. 22, 2010) ("Now that Respondents seek either a modification of those initial decisions or the issuance of a new ruling on Petitioner's custody, Rule 23(d) applies.  A Rule 23(d) motion may only be considered by a court of appeals, the Supreme Court, or a judge or justice of one of those courts.").  *But see Mosley v. Cullen*, No. C05-4260 TEH, 2011 WL 838896, at *2 n.1 (N.D. Cal. Mar. 4, 2011) ("[A] district court lacks jurisdiction to modify a custody order under Rule 23(d), which refers only to appellate judges and Supreme Court justices.  However, the parties in this case agree that the Ninth Circuit's remand order provides this Court with jurisdiction to rule on the Warden's motion.").

order, we assume—but only for the limited purpose of deciding this emergency motion—that the district court had a vehicle not only to order release but also to bar reprosecution.

The State posits that it has already released Woodfox from custody on the 1998 indictment and contends that it is now detaining him under a new arrest warrant and indictment that it secured in February 2015, before the district court ordered Woodfox's immediate release on June 8, 2015. Thus, according to the State, Woodfox is now in pre-trial custody and can challenge his ongoing pre-trial detention in the state court. *See, e.g.*, La. Code Crim. Proc. Ann. art. 701(D)(1)(a). Because this chronology of release and independent re-indictment preceded the release order now under review, we focus our analysis on whether the district court abused its discretion when it barred reprosecution.

## II.

"We consider four factors in deciding whether to grant a stay pending appeal: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'"[6] To succeed on the merits, the state must show that the district court abused its discretion by ordering Woodfox's unconditional release and prohibiting retrial.[7]

---

[6] *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)) (internal quotation marks omitted).

[7] *See Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) (holding that "the portion of the order requiring the dismissal of the indictment" if the State "fails to retry [petitioner] within 120 days . . . constitutes an abuse of discretion").

No. 15-30506

In *Braunskill*, the Court "recognized that the applicant need not always show a likelihood of success on the merits. The prisoner should remain in custody if the State can 'demonstrate a substantial case on the merits' and the other factors militate against release."[8] Moreover, courts may consider whether "there is a risk that the prisoner will pose a danger to the public if released" and "[t]he State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal," which "will be strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served." *Braunskill*, 481 U.S. at 777.

### III.

The most important factor is whether the state has made a strong showing of likelihood of success on the merits. *Woodfox*, 305 F. App'x at 181. Although a district court "has broad discretion in conditioning a judgment,"[9] the "relief must . . . be fitted between two principles underlying habeas corpus jurisprudence." *Henderson v. Frank*, 155 F.3d 159, 168 (3d Cir. 1998). First, "[t]he court shall . . . dispose of the matter as law and justice require." 28 U.S.C. § 2243. Second, "[b]oth the historic nature of the writ and principles of federalism preclude a federal court's direct interference with a state court's conduct of state litigation."[10] In accordance with those principles, "[o]ther than granting the writ of habeas corpus and imposing time limits in which the state must either release the petitioner or correct the problem, the precise remedy

---

[8] *Woodfox*, 305 F. App'x at 181 (quoting *Braunskill*, 481 U.S. at 778).

[9] *See Braunskill*, 481 U.S. at 775 ("[A] court has broad discretion in conditioning a judgment granting habeas relief.").

[10] *Henderson*, 155 F.3d at 168 (quoting *Barry v. Brower*, 864 F.2d 294, 300 (3d Cir. 1988) (internal quotation marks omitted)); *see id.* ("Within the strictures of these principles, federal courts have most often granted the relief in habeas cases that has required the least intervention into the state criminal process.").

is generally left to the state."[11]

"In rare circumstances," however, "a habeas court can end a state criminal proceeding as part of the habeas remedy." *Jones*, 600 F.3d at 542. "[P]reventing the retrial of a state criminal case is the strongest of medicine. And it is a measure that should be utilized with the utmost restraint, only in the most extraordinary of circumstances."[12] An unconditional writ barring retrial is "generally limited to situations where the nature of the error is simply incurable, such as a conviction under an unconstitutional statute."[13] Although the district court correctly noted that Woodfox's unconstitutional "indictment could . . . be corrected by . . . re-arrest and reindictment,"[14] it nevertheless found that "exceptional circumstances" warrant an unconditional release with prejudice to rearrest and retrial.[15] But "[i]mmediate release from custody with

---

[11] BRIAN R. MEANS, FEDERAL HABEAS MANUAL: A GUIDE TO FEDERAL HABEAS CORPUS LITIGATION § 13:4 at 1371 (2014) (citing *Bastida v. Braniff*, 444 F.2d 396, 398 (5th Cir. 1971) ("It goes without saying that a federal court should not become involved in the judicial administration of the state court system if any reasonable alternative exists by which adequate relief can be afforded.")); *see id.* ("The object is not to make whole someone who has suffered a loss; it is to determine whether a person is being confined in violation of basic norms of legality." (quoting *Allen v. Duckworth*, 6 F.3d 458, 460 (7th Cir. 1993) (internal quotation marks omitted)).

[12] *Wolfe v. Clarke*, 718 F.3d 277, 288 (4th Cir. 2013), *cert. denied*, 134 S. Ct. 1281 (2014) (citing *Gilliam v. Foster*, 75 F.3d 881, 905 (4th Cir. 1996) (en banc) ("Equitable federal court interference with ongoing state criminal proceedings should be undertaken in only the most limited, narrow, and circumscribed situations.")).

[13] *Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir. 2006); *see Jones*, 600 F.3d at 542 ("If the constitutional problem that led to the grant of the writ cannot be cured by a new trial—for example, if a double jeopardy violation merits habeas relief—then the habeas court can permanently end the state criminal proceeding.").

[14] *Woodfox*, 2015 WL 3549787, at *3.

[15] *Id.* at *15; *see id.* at *4 (quoting *Jones*, 600 F.3d at 542 ("For a federal court to exercise its habeas corpus power to stop a state criminal proceeding 'special circumstances' must exist . . . . [T]he constitutional violation must be such that it cannot be remedied by another trial, or other exceptional circumstances [must] exist such that the holding of a new trial would be unjust." (alterations in original) (quoting *Capps v. Sullivan*, 13 F.3d 350, 352–53 (10th Cir. 1993)) (internal quotation marks omitted)).

prejudice is rarely awarded, and when it is, the appellate courts may find abuse of discretion."[16]

Although, as the district court observed, the parties did not "present any Fifth Circuit jurisprudence to show what circumstances are sufficient required [*sic*] to justify the issuance of an unconditional writ barring retrial," *Woodfox*, 2015 WL 3549787, at *4, the order was based on

> Mr. Woodfox's age and poor health, his limited ability to present a defense at a third trial in light of the unavailability of witnesses, this Court's lack of confidence in the State to provide a fair third trial, the prejudice done onto Mr. Woodfox by spending over forty-years in solitary confinement, and finally the very fact that Mr. Woodfox has already been tried twice and would otherwise face his third trial for a crime that occurred over forty years ago.

*Id.* at *15. The court gave "little weight" to "[t]he fact that Mr. Woodfox has not served the maximum possible sentence [of life imprisonment] and the fact that the underlying constitutional violation could be corrected upon retrial"; it opined that the "evidence of guilt is [not] 'overwhelming.'" *Id.*

The Supreme Court has acknowledged the costs of vacating a conviction because of "discrimination on the basis of race in the selection of members of a grand jury"[17] even though there was no constitutional defect in the trial itself:

> We do not deny that there are costs associated with this approach. But the remedy here is in many ways less drastic than in situations where other constitutional rights have been violated. In the case of a Fourth or Fifth Amendment violation, the violation often results in the suppression of evidence that is highly probative on the issue of guilt. *Here, however, reversal does not render a defendant immune from prosecution, nor is a subsequent reindictment and reprosecution barred altogether* . . . . "A prisoner whose conviction is reversed by this Court

---

[16] *Carter v. Rafferty*, 621 F. Supp. 533, 559 (D.N.J. 1985), *aff'd*, 826 F.2d 1299 (3d Cir. 1987) (citing LARRY W. YACKLE, POSTCONVICTION REMEDIES, § 141 at 530–31 (1981) (citing *Hammontree v. Phelps*, 605 F.2d 1371, 1380–81 (5th Cir. 1979))).

[17] *Rose v. Mitchell*, 443 U.S. 545, 556 (1979).

need not go free if he is in fact guilty, for *[the State] may indict and try him again by the procedure which conforms to constitutional requirements.*"[18]

As in *Mitchell*, the underlying constitutional violation warranting habeas relief —racial discrimination in the selection of the grand jury foreperson—is not "highly probative on the issue of guilt."[19]

Without any mention of *Mitchell*, the district court relied heavily on a forty-year-old decision from another circuit—*Schuster v. Vincent*, 524 F.2d 153 (2d Cir. 1975)—as evidence that "at least one court [has] permanently discharged a defendant from custody despite the clear guilt of the defendant because of the seriousness of the confinement he was placed under and other exceptional circumstances." *Woodfox*, 2015 WL 3549787, at *12. But the unique and extreme facts of *Schuster* are completely inapposite to the case at hand. There, a prisoner would have been eligible for parole almost thirty years earlier had there not been "apparent retaliation for his efforts to expose prison corruption"[20] and a sanity hearing, ordered to be held within sixty days as part of federal habeas relief, was delayed for three years—"[a] flagrant violation of the spirit of [the] mandate"—which "require[d] [the court] to consider Schuster as constructively paroled" and to order his absolute discharge.[21]

---

[18] *Id.* at 557–58 (second alteration in original) (emphases added) (quoting *Hill v. Texas*, 316 U.S. 400, 406 (1942)) (internal quotation marks omitted).

[19] *Id.* at 557.

[20] *Schuster*, 524 F.2d at 154.

[21] *Id.* at 161 (footnote omitted). Woodfox's reliance on *Capps* is also unavailing. There, a district court granted a writ of habeas corpus barring retrial because the state had failed to release the petitioner or retry him within ninety days of the original writ. *Capps*, 13 F.3d at 351–52. The circuit court found that was an abuse of discretion "because nothing in the record suggests the constitutional violation was not redressable in a new trial." *Id.* at 353. And unlike the circumstance in *D'Ambrosio v. Bagley*, 656 F.3d 379, 380 (6th Cir. 2011), the state has not "failed to comply with an earlier order issuing a conditional writ of habeas corpus."

No. 15-30506

Woodfox has twice been convicted of the murder of Brent Miller, a prison guard at the penitentiary where Woodfox was serving a fifty-year sentence for armed robbery. The state has a strong interest in continuing custody of Woodfox and reprosecuting him for that murder—a crime for which he was serving a life sentence without the possibility of parole.[22] The constitutional claim for which he was awarded habeas relief is readily capable of being remedied by a new indictment and trial. *See Mitchell*, 443 U.S. at 556; *Wolfe*, 718 F.3d at 290.

To the extent that the district court's order was based on concern for the lack of available evidence at retrial or doubts about the state's ability to provide a fair retrial, "the task of conducting [a] retrial is for the state trial court, and it is not for us to express a view on how that court should manage its affairs."[23] No showing has been made that any state retrial (or any appeal) will be improperly handled.

In summary, the state has succeeded on the first prong of its burden for a motion for stay pending appeal. It has made a strong showing that it is likely to succeed on the merits.[24]

---

[22] *See Braunskill*, 481 U.S. at 777 ("The State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal . . . [is] strongest where the remaining portion of the sentence to be served is long . . . .").

[23] *Wolfe*, 718 F.3d at 289; *see also Pitchess v. Davis*, 421 U.S. 482, 490 (1975) ("Neither Rule 60(b), 28 U.S.C. § 2254, nor the two read together, permit a federal habeas court to maintain a continuing supervision over a retrial conducted pursuant to a conditional writ granted by the habeas court.").

[24] *See Wolfe*, 718 F.3d at 290 ("At the end of the day, any scenario presenting circumstances sufficiently extraordinary to warrant federal interference with a State's reprosecution of a successful § 2254 petitioner will be extremely rare, and will ordinarily be limited to situations where a recognized constitutional error cannot be remedied by a new trial."); *Jones*, 600 F.3d at 542 ("Here, a retrial would not violate [petitioner's] constitutional rights. Additionally, there are no other 'special circumstances' that justify an order ending all state murder proceedings . . . ."). The weakness of Woodfox's case on the merits is revealed in his struggle to find favorable Fifth Circuit authority. In that regard, he relies almost exclusively on *Jones*. But there we ruled that the district court had abused its discretion in ordering

No. 15-30506

IV.

Although we "acknowledge[] that the interest of a successful habeas petitioner in being released pending appeal is 'always substantial,'"[25] the remaining factors favor the state.  As for the state's irreparable injury and the public interest, there is a substantial interest in staying the release of a person, twice convicted of murder, from being released from a life sentence without the possibility of parole.  In 2008, we recognized that Warden Cain "unequivocally stated . . . that he believed, based upon Woodfox's entire history and the particular circumstances surrounding the case, that Woodfox is still too dangerous to be allowed into the general population at the prison or into the public at large." *Woodfox*, 305 F. App'x at 181–82.  Cain still maintains that Woodfox is "both dangerous and a flight risk."[26]

The motion for a stay pending appeal is GRANTED.[27]  The appeal is *sua sponte* EXPEDITED to a regular oral-argument merits panel to be assigned as soon as expedited briefing is complete.  The clerk is directed to issue an expedited briefing schedule.

---

dismissal of the indictment.  *Jones*, 600 F.3d at 541–42.  The acknowledgement of the theoretical possibility of "special circumstances" is *dictum*, and we gave no examples of such situations other than double jeopardy or a "constitutional violation . . . that . . . cannot be remedied by another trial."  *Id.* at 542.  If anything, *Jones* assists the state here more than it helps Woodfox.  To the extent that Woodfox claims that his extended solitary confinement is an exceptional circumstance, he is really seeking an unconditional writ as punishment for conditions of confinement, which is not a proper subject of inquiry in this habeas corpus proceeding.

[25] *Woodfox*, 305 F. App'x at 181 (quoting *Braunskill*, 481 U.S. at 777).

[26] Emergency Motion To Stay Release Pending Appeal at 1; *see also id.* at 18–24 (detailing Woodfox's criminal history); *id.* at 24–27 (describing Woodfox's access to significant financial resources, including from sources overseas such as, *inter alia*, Islamic terrorist organizations).

[27] This ruling supersedes the order entered by this motions panel on June 9, 2015.