# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30506

ALBERT WOODFOX,

Petitioner - Appellee

v.

BURL CAIN, WARDEN, LOUISIANA STATE PENITENTIARY; JAMES CALDWELL,

Respondents - Appellants

Appeal from the United States District Court
for the Middle District of Louisiana

United States Court of Appeals
Fifth Circuit

**FILED**

November 9, 2015

Lyle W. Cayce
Clerk

Before KING, DENNIS, and OWEN, Circuit Judges.

KING, Circuit Judge:

On June 8, 2015, the district court granted Petitioner–Appellee Albert Woodfox an unconditional writ of habeas corpus, barring the State of Louisiana from prosecuting him for the third time for a 1972 murder. The district court reasoned that Woodfox's case presented "exceptional circumstances" that cast doubt on the ability of the State to give Woodfox a fair retrial. The State now appeals, challenging the district court's grant of an unconditional writ. We conclude that this case does not involve an irremediable constitutional violation or "exceptional circumstances" meriting the writ. Accordingly, we

No. 15-30506

hold that the district abused its discretion in issuing the unconditional writ. We REVERSE.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts and extensive procedural history of Albert Woodfox's case have been recounted time and again, but they bear repeating since they factored into the unconditional writ granted by the district court. On April 17, 1972, Correctional Officer Brent Miller, of the Louisiana State Penitentiary in Angola, Louisiana, was found murdered in the prison dormitory, having been stabbed 32 times. The investigation of Officer Miller's murder soon focused on Woodfox who, at the time, was an inmate in Angola serving a fifty-year sentence for armed robbery. The State prosecuted Woodfox for Officer Miller's murder and obtained a second degree murder conviction in 1973, later affirmed by the Supreme Court of Louisiana. Woodfox pursued postconviction remedies, and in 1992, his conviction was overturned by the 18th Judicial District Court of Louisiana. That court concluded that Woodfox was "denied his constitutional right of effective assistance of counsel" at his 1973 trial.[1] Woodfox was then reindicted in March 1993 in West Feliciana Parish for Officer Miller's murder and was again found guilty in 1998. He appealed this conviction, which was affirmed by the Louisiana Court of Appeal, First Circuit.

After Woodfox exhausted his state postconviction remedies, he filed a federal habeas corpus petition on October 11, 2006, challenging the 1998 conviction on the grounds of ineffective assistance of counsel, state suppression of exculpatory evidence, and racial discrimination in the selection of the grand jury foreperson at his 1998 retrial. On September 25, 2008, the district court granted Woodfox a writ of habeas corpus on ineffective assistance of counsel

---

[1] The court's conclusion rested on the fact that counsel failed to quash petitioner's indictment, which was obtained by "an unconstitutionally impaneled grand jury."

grounds and ordered that a new trial be conducted within 120 days. Following this, on November 25, 2008, the district court issued a custody order staying the judgment requiring a new trial but granting Woodfox's release "pending the State's appeal." The State filed an emergency motion to stay the custody order pending appeal of the September 2008 writ, and this court granted the motion on December 2, 2008, staying any release "pending further order of this court." *Woodfox v. Cain (Woodfox I)*, 305 F. App'x 179, 182 (5th Cir. 2008) (per curiam) (unpublished).

In 2010, this court vacated the September 2008 writ. Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), the district court was required to give deference to a state habeas court's decision on the merits unless it was contrary to or an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). Because we found that the state habeas court's decision denying Woodfox relief on his ineffective assistance of counsel claims was not contrary to or an unreasonable application of federal law, we held that the district court erred in not deferring to the state court and in granting the September 2008 writ. *Woodfox v. Cain (Woodfox II)*, 609 F.3d 774, 794–817 (5th Cir. 2010). However, we remanded to the district court to resolve the remaining issue of alleged racial discrimination in the selection of the grand jury foreperson, an issue that had not been decided by the district court. *Id.* at 817–18.

On remand, the district court granted habeas relief on the ground that the selection process for grand jury forepersons in West Feliciana Parish was racially discriminatory at the time of Woodfox's indictment. The district court based its holding on the fact that African Americans were substantially underrepresented as grand jurors in proportion to their total population in the Parish. The State had not rebutted this *prima facie* case of discrimination because West Feliciana Parish's selection procedure for grand jury forepersons

allowed in subjective criteria that could include race and gender. *Woodfox v. Cain*, 926 F. Supp. 2d 841, 844–857 (M.D. La. 2013). The State again appealed. This court affirmed the grant of habeas relief on November 20, 2014, and remanded the case to the district court "for further proceedings consistent with th[e] opinion." *Woodfox v. Cain (Woodfox III)*, 772 F.3d 358, 383 (5th Cir. 2014), *cert. denied*, No. 14-1288 (Oct. 5, 2015).

The case went back to the district court, and on February 6, 2015, Woodfox filed a motion under Federal Rule of Appellate Procedure 23(c) requesting release from his imprisonment for the 1998 murder conviction. Before the district court ruled on the motion and one day after the Fifth Circuit issued its mandate on February 11, 2015, the State reindicted Woodfox for the murder of Officer Miller and moved him from Angola to West Feliciana Parish Prison. Without considering the validity of the 2015 reindictment, the district court held a hearing on March 2, 2015 regarding Woodfox's motion requesting release.

The district court ultimately decided Woodfox's motion for release and granted an unconditional writ of habeas corpus barring retrial on June 8, 2015. The district court recognized that such a writ was "an extraordinary remedy [issued] in the rarest of circumstances." *Woodfox v. Cain*, No. 06-789-JJB-RLB, 2015 WL 3549787, at \*2 (M.D. La. June 8, 2015) [hereinafter *Woodfox (M.D. La.)*]. But it held that the writ was merited where a retrial could not remedy an underlying constitutional violation or where a case presented "exceptional circumstances." *Id.* at \*3. While the district court recognized that the constitutional violation identified in *Woodfox III* "could, conceivably, be corrected by the re-arrest and reindictment of Mr. Woodfox," his case presented "exceptional circumstances" that would render a new trial unjust. *Id.*

In particular, the court pointed to seven factors that, taken in total, warranted an unconditional writ. First, the court noted that Woodfox was

"sixty-eight-years-old and in poor health." *Id.* at *8. Second, the court believed the lapse of time between Woodfox's first trial in 1973 and a third trial would prejudice his ability to present a defense because the case was premised on eyewitness testimony and key witnesses for the prosecution from the 1973 trial were no longer alive. *Id.* at *8–10. This was particularly worrisome to the district court because evidence had emerged subsequent to the 1973 trial (but before the 1998 retrial) undermining the credibility of these witnesses, who could no longer be cross-examined. Third, the district court pointed to litigation tactics used by the State, which cast doubt on its ability to provide a fair retrial. *Id.* at *10–11. These tactics included having a prosecutor vouch for a key witness at retrial[2] and the State's attempts in 2015 to "moot" the case by reindicting and transferring Woodfox. *Id.* Fourth, the district court believed that there was evidence suggesting Woodfox's actual innocence, including exculpatory statements from witnesses and a lack of physical evidence tying Woodfox to the murder. *Id.* at *11–12. Fifth, Woodfox's four-decades-plus imprisonment in solitary confinement was beyond what other defendants had faced. *Id.* at *12. Sixth, both of Woodfox's previous trials suffered from the same constitutional defect of racial discrimination in the grand jury foreperson selection, "giv[ing] [the] [c]ourt reason to question whether a third indictment would not suffer a similar defect." *Id.* at *13. And seventh, the State would get a "third bite at the apple" absent an unconditional writ, allowing the State to prosecute Woodfox a third time for the 1972 murder. *Id.*

The State filed an emergency motion to stay Woodfox's release under the June 2015 writ, and this court granted the stay on June 12, 2015. *See Woodfox*

---

[2] This court previously noted Woodfox's inability to cross-examine certain witnesses and the prosecutor's testimony at retrial as part of Woodfox's ineffective assistance of counsel claims in *Woodfox II*. 609 F.3d at 797–806.

*v. Cain (Woodfox IV)*, 789 F.3d 565, 572 (5th Cir. 2015). Concurrent with its emergency motion, the State timely appealed the unconditional writ on the merits.

## II. STANDARD OF REVIEW

This court reviews habeas remedies for "abuse of discretion." *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010).[3] However, as *Jones* and other courts have suggested, appellate review of a district court's habeas remedy "is somewhat less deferential than the flexible abuse of discretion applicable in other contexts." *Yong v. INS*, 208 F.3d 1116, 1119 (9th Cir. 2000); *see also Jones*, 600 F.3d at 542. And we have observed that, even under "this deferential standard, a decision grounded in erroneous legal principles is reviewed de novo." *Sepluvado v. Jindal*, 729 F.3d 413, 417 (5th Cir. 2013) (quoting *Janvey v. Alguire*, 647 F.3d 585, 592 (5th Cir. 2011)). While a district court generally has "broad discretion in conditioning a judgment granting habeas relief" and is "authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require,'" *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (quoting 28 U.S.C. § 2243), an unconditional writ remains "an extraordinary remedy." *Jones*, 600 F.3d at 542 (quoting *Foster v. Lockhart*, 9 F.3d 722, 727 (8th Cir. 1993)); *see also Wolfe v. Clarke*, 718 F.3d 277, 288 (4th Cir. 2013) ("[P]reventing the retrial of a state criminal case is the strongest of medicine. And it is a measure that should be utilized with the utmost restraint, only in the most extraordinary of circumstances."). Recognizing that

---

[3] We note that a decision on the merits in a federal–state habeas case is reviewed under a higher threshold. Under AEDPA, we are required to defer to a state court's adjudication of a claim on the merits unless the state court proceeding (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

this remedy is seldom given, we must be more searching in our review of a district court habeas remedy barring retrial.

## III. THE HABEAS REMEDY

"The typical relief granted in federal habeas corpus is a conditional order of release unless the State elects to retry the successful habeas petitioner." *Herrera v. Collins*, 506 U.S. 390, 403 (1993). However, "[i]n rare circumstances, a habeas court can end a state criminal proceeding as part of the habeas remedy." *Jones*, 600 F.3d at 542. To permanently end a state criminal proceeding, federal habeas courts issue an unconditional writ, barring reprosecution and retrial of the petitioner. An unconditional writ is an "extraordinary remedy" for two reasons. *Id.* (quoting *Foster*, 9 F.3d at 727). First, by preventing retrial, federal habeas courts effectively operate as courts of first instance. *See, e.g.*, *Cullen v. Pinholster*, 131 S. Ct. 1388, 1399 (2011) (noting that it would be contrary to AEDPA to have a petitioner introduce new evidence "in a federal habeas court and [have it] reviewed by that court in the first instance effectively *de novo*"). Second, with respect to federal–state habeas review under 28 U.S.C. § 2254, unconditional writs are in tension with "AEDPA's goal of promoting comity, finality and federalism by giving state courts the first opportunity to review [the] claim and to correct any constitutional violation in the first instance." *Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009) (alteration in original) (quoting *Carey v. Saffold*, 536 U.S. 214, 220 (2002)); *see also Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir. 2006) ("District courts rightly favor conditional grants, which provide states with an opportunity to cure their constitutional errors, out of a proper concern for comity among the co-equal sovereigns."). This tension arises because unconditional writs end the case rather than allowing the state "an opportunity to correct the constitutional violation found by the [federal] court" in its own courts. *Hilton*, 481 U.S. at 775.

No. 15-30506

We have concluded that unconditional writs are justified where "[t]he constitutional violation [is] such that it cannot be remedied by another trial, or other exceptional circumstances . . . exist such that the holding of a new trial would be unjust." *Jones*, 600 F.3d at 542 (quoting *Capps v. Sullivan*, 13 F.3d 350, 352–53 (10th Cir. 1993)). This case, however, does not present a constitutional defect that cannot be cured at retrial. And the factors identified by the district court as "exceptional circumstances" do not merit an unconditional writ and improperly assume that state courts will not provide Woodfox with a fair retrial. For these reasons, as set out below, we conclude that the district court abused its discretion in granting the unconditional writ.

**A.**

As previously noted, the constitutional violation identified by Woodfox and affirmed by this court was racial discrimination in the selection of grand jury forepersons in West Feliciana Parish at the time of Woodfox's 1993 indictment. *Woodfox III*, 772 F.3d at 383. The district court concluded, and neither party now disputes, that this violation was not irremediable. *See Woodfox (M.D. La.)*, 2015 WL 3549787, at *3 ("Here, the 1993 indictment could, conceivably, be corrected by the re-arrest and reindictment of Mr. Woodfox."). The district court noted that neither side "cite[d] a case where a federal habeas court . . . barred reprosecution of a state conviction obtained through the discriminatory selection of a grand jury foreperson." *Id.* This is because the sort of constitutional violation that cannot be remedied by another trial involves an instance "where a retrial itself would violate the petitioner's constitutional rights." *Jones*, 600 F.3d at 542 (quoting *Foster*, 9 F.3d at 727). This includes situations where, for example, a court lacked jurisdiction over

8

the petitioner,[4] the petitioner was convicted under an unconstitutional statute,[5] or the petitioner's retrial would violate double jeopardy.[6] In these instances, there is no concern with barring retrial through an unconditional writ because "the constitutional problem that led to the grant of the writ cannot be cured by a new trial." *Id.*

*Rose v. Mitchell*, 443 U.S. 545 (1979), indicates that the violation found in *Woodfox III* is not irremediable. In *Rose*, the Supreme Court addressed whether constitutional claims of racial discrimination in grand jury selection were cognizable in federal habeas corpus. The *Rose* Court concluded that such claims were cognizable but alleviated concerns that its holding would nullify otherwise validly obtained convictions. *Id.* at 563–65. It stated that reversal of a conviction on these grounds did not "render a defendant immune from prosecution" and was not a bar on "subsequent reindictment and reprosecution." *Id.* at 558. Even when "a federal court quashe[d] an indictment [for being returned by an improperly constituted grand jury], the State remain[ed] free to use at a second trial any and all evidence it employed at the first proceeding." *Id.* at 564. As *Rose* makes clear, there was no irremediable constitutional violation in *Woodfox III* supporting an unconditional writ.

**B.**

Rather than holding that the unconditional writ was merited by the particular constitutional violation at issue, the district court barred

---

[4] *See, e.g., Solem v. Bartlett*, 465 U.S. 463, 465–66 (1984) (granting an unconditional writ where a state court lacked jurisdiction over a petitioner whose crimes were committed on "Indian country," making them within the exclusive jurisdiction of the federal courts).

[5] *See, e.g., Smith v. Goguen*, 415 U.S. 566, 571 (1974) (affirming an unconditional writ granted for a conviction under a state statute that was unconstitutionally void for vagueness)

[6] *See, e.g., Vogel v. Pennsylvania*, 790 F.2d 368, 380 (3d Cir. 1986) (directing the district court to "take whatever action [wa]s necessary to relieve [the petitioner] of all [the] consequences of his detention").

reprosecution because this case involved "exceptional circumstances." Its conclusion rested in part on the existence of out-of-circuit, "rare cases that . . . granted the extraordinary remedy," and seven "circumstances surrounding Mr. Woodfox['s] case that he propose[d] [we]re exceptional." *Woodfox (M.D. La.)*, 2015 WL 3549787, at *3. But the cases cited by the district court granting unconditional release are inapposite to the one at hand. Furthermore, the seven factors identified are either irrelevant in federal habeas proceedings, better addressed in other proceedings, or presume that the state court at retrial will be unable "to correct any constitutional violation in the first instance,"—a presumption that runs counter to the comity concerns that animate federal–state habeas. *Jimenez*, 555 U.S. at 121 (quoting *Carey*, 536 U.S. at 220).[7]

In support of its order, the district court first identified a number of decisions granting unconditional writs that it believed were similar to Woodfox's case. However, even if we were to assume *arguendo* that these cases are persuasive, they are distinguishable. *Schuster v. Vincent*, 524 F.2d 153, 161–62 (2d Cir. 1975), granted an unconditional release but only after the State of New York deliberately ignored previous court mandates in order to prolong the petitioner's imprisonment. There is no indication that the State here has directly contravened a court mandate. *Hannon v. Maschner*, 981 F.2d 1142, 1145 (10th Cir. 1992), also granted an unconditional release, but that case involved an instance where "the petitioner lost the opportunity to file a direct appeal" and state courts refused to provide the petitioner with direct appellate review for a period of thirty-three years. Nothing suggests Woodfox has been unable to or will be unable to file direct appeals in his case. And

---

[7] The *Woodfox IV* stay panel suggested that "[t]he acknowledgement of the theoretical possibility of 'special circumstances' [in *Jones* was] *dictum*." *Woodfox IV*, 789 F.3d at 572 n.24. However, the vitality of the "exceptional circumstances" prong is not before us today because Woodfox's case does not present "exceptional circumstances" in any event.

*Latzer v. Abrams*, 615 F. Supp. 1226, 1231 (E.D.N.Y. 1985), identified by the district court as issuing an unconditional writ, actually declined to bar retrial. The closest cases to Woodfox's situation cited by the district court are *Morales v. Portuondo*, 165 F. Supp. 2d 601 (S.D.N.Y. 2001) and *D'Ambrosio v. Bagley*, 688 F. Supp. 2d 709 (N.D. Ohio 2010), where the courts granted unconditional releases to petitioners when there had been long gaps between trial and retrial, issues with key eyewitnesses, indications of prosecutorial misconduct, and evidence suggesting actual innocence. However, *Morales* and *D'Ambrosio* are not binding on this court, and neither of them touched on why it was appropriate to deprive state courts of the opportunity to address alleged constitutional errors in the first instance.[8]

The factors identified by the district court also do not support an unconditional writ. The first of these, Woodfox's age and health, is irrelevant. None of the cases cited by the district court or petitioner indicates that old age and poor health are considerations in granting unconditional writs.[9] And we are aware of no general principle that either of these is a relevant factor in federal habeas remedies.

The second factor considered by the district court was that a lapse in time would prejudice Woodfox's ability to present a defense on retrial. The district court noted that forty years had passed since the crime at issue and

---

[8] The facts of both cases are also distinguishable from Woodfox's circumstances. *Morales* and *D'Ambrosio* involved stronger claims of actual innocence, prosecutorial misconduct, and eyewitness issues than this case. *See D'Ambrosio*, 688 F. Supp. 2d at 728–30 (noting that the State's lone eyewitness had died and that this fact had been deliberately concealed by the prosecution); *Morales*, 165 F. Supp. 2d at 602 ("[A]nother individual had confessed to participating in the murder and exonerated [the defendant].").

[9] The *Schuster* decision, primarily relied on by the lower court, nowhere indicated that Schuster's age was a consideration in the unconditional writ it granted. *Johnston v. Marsh*, 227 F.2d 528 (3d Cir. 1955), cited by Woodfox as support for the consideration of old age and health, involved a conditional release order that allowed a petitioner to remain on bail pending a merits determination of his habeas petition.

that a number of witnesses had passed away. The district concluded that this would prejudice Woodfox's ability to present a defense at a third trial and make it "impossible for any reasonable juror to fairly draw the inference she would be required to make in order to render a verdict in this case." *Woodfox (M.D. La.)*, 2015 WL 3549787, at *10. The district court, however, failed to explain why these issues could not be addressed by a *state court* first at retrial. By examining prejudice from retrial, prior to any state judgment on the matter, the district court erred. Federal habeas courts, sitting in review of federal–state habeas petitions, should let state courts address constitutional and evidentiary issues in the first instance. *See Rose v. Lundy*, 455 U.S. 509, 518 (1982) ("[I]t would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950))). Failing to do so not only upsets the federal–state comity concerns of AEDPA, but it also cuts against the exhaustion requirement of 28 U.S.C. § 2254(b)(1), which requires petitioners to first present habeas claims to state courts. *See DiSimone*, 518 F.3d at 127 ("The question whether retrial is in fact improper . . . must be determined in the first instance by the state courts, if and when the state chooses to retry the petitioner."). There is no suggestion here that a state court will be unable to evaluate the prejudicial effect of any lapse of time. Arguments as to this prejudicial effect should first be presented to a state court.

The third factor considered by the district court, the lack of confidence in the State's ability to provide a fair retrial, does not provide a basis for relief. The district court believed that the State was engaging in "troubling conduct" and trying "to moot the issues" by obtaining a third indictment of Woodfox prior to any mandate being issued, by unilaterally transferring him to parish prison, and by delaying its petition for *certiorari* in *Woodfox III. Woodfox (M.D. La.)*,

2015 WL 3549787, at *10–11.[10]  This behavior, however, does not warrant the extraordinary remedy of unconditional release.  The State's conduct is not similar to the disobedience toward court mandates found by other courts to merit unconditional writs.  *See Schuster*, 524 F.2d at 161–62.  Moreover, by concluding that the State's previous misconduct will not lead to a fair retrial, the district court discredited the ability of the state courts to redress violations by the State.

On the fourth factor, the district court "question[ed] the strength of the evidence keeping Mr. Woodfox incarcerated for the murder of Mr. Miller," noting that "not one piece of physical evidence incriminated Mr. Woodfox." *Woodfox (M.D. La.)*, 2015 WL 3549787, at *11–12.  But the district court's conclusion discounted the fact that Woodfox had been convicted of Officer Miller's murder twice before, with both convictions upheld on appeal. Furthermore, an actual innocence claim is better directed to state courts in the first instance.  *See State v. Conway*, 816 So. 2d 290, 291 (La. 2002) (identifying Louisiana's standard for an actual innocence claim); *see also Herrera*, 506 U.S. at 400 ("[T]he existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." (quoting *Townsend v. Sain*, 372 U.S. 293, 317 (1963))).

The fifth factor identified by the district court, Woodfox's prolonged solitary confinement, is not an appropriate consideration and is better addressed through other proceedings as well.  As one court recognized, if a prisoner "is challenging the conditions rather than the fact of his confinement [then] his remedy is under civil rights law." *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991); *see also Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)

---

[10] The district court made it clear though that the validity of "the 2015 indictment [was] not before [it]." *Id.* at *15.

("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."). In fact, the two decisions cited by the district court to support its consideration of Woodfox's solitary confinement indicate that 42 U.S.C. § 1983 actions are the appropriate avenue for addressing the conditions of solitary confinement. *See Wilkerson v. Goodwin*, 774 F.3d 845, 848–50 (5th Cir. 2014); *Wilkerson v. Stalder*, 639 F. Supp. 2d 654 (M.D. La. 2007).[11]

The sixth factor meriting an unconditional writ was the district court's doubt that the state trial court would be able to provide a fair retrial because the two previous indictments of Woodfox "were ultimately found to be unconstitutional." *Woodfox (M.D. La.)*, 2015 WL 3549787, at *13. This conclusion is erroneous because, like the second and third factors, it casts doubt on the fairness of the state court process before it has even occurred. Moreover, the district court recognized that the error in the previous cases could "be corrected at a retrial." *Woodfox (M.D. La.)*, 2015 WL 3549787, at *13.

The final factor cited in support of the unconditional writ—that this would be Woodfox's second retrial—also suffers from improper assumptions regarding the fairness of a third trial. The district concluded that a second retrial of Woodfox would be an unmerited "third bite at the apple for the State." *Id.* The court held that this was an exceptional circumstance because Woodfox "fac[ed] perhaps another twenty years before a court determines if he was given a fair third trial." *Id.* The court again improperly assumed that a state

---

[11] The *Goodwin* and *Stalder* opinions cited by the district court arose from a § 1983 action filed by Woodfox and two other inmates in Angola. That suit is currently pending in the United States District Court for the Middle District of Louisiana. *See Wilkerson v. Stalder*, No. 00-304-JJB-RLB (M.D. La. Aug. 3, 2015) (ruling on motion for partial summary judgment).

court would not provide a fair retrial and that Woodfox would have to file another round of appeals and seek postconviction remedies. Any concerns about the fairness of the State getting a "third bite at the apple" are also irrelevant. Absent an irremediable constitutional violation, states can retry defendants successively. *See Robinson v. Wade*, 686 F.2d 298, 310 (5th Cir. 1982) (denying habeas relief to a petitioner facing a third retrial).

Woodfox defends the seven factors identified by the district court, arguing that, taken in total, they show that there are "exceptional circumstances" barring any further retrial or reprosecution. However, the totality of the circumstances identified are not enough to merit this extraordinary remedy. The various factors are immaterial, better addressed in other proceedings, or improperly assume that state courts will be unable to provide Woodfox with a fair retrial. Federal courts have a limited role in federal–state habeas and generally should not preclude state courts from remedying constitutional errors in the first instance. The district court abused its discretion by barring retrial and by granting the extraordinary remedy of an unconditional writ.[12]

## IV. CONCLUSION

Because the district court abused its discretion in granting Woodfox an unconditional writ of habeas corpus and in ordering him released. We REVERSE.

---

[12] Because we hold that the district court abused its discretion in granting the writ, we do not decide whether *Younger* abstention or Federal Rule of Appellate Procedure 23(d) also prohibit the unconditional writ, as the State argues.

No. 15-30506

JAMES L. DENNIS, Circuit Judge, dissenting.

"The writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action." *Harris v. Nelson*, 394 U.S. 286, 290–91 (1969). "Today, as in prior centuries, the writ is a bulwark against convictions that violate 'fundamental fairness.'" *Engle v. Isaac*, 456 U.S. 107, 126 (1982). This laudable mission is reflected in Congress's explicit command that district courts dispose of habeas petitions "as law and justice require." 28 U.S.C. § 2243.

The Supreme Court has consistently interpreted § 2243's mandate as vesting district courts with "broad discretion in conditioning a judgment granting habeas relief." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987). Indeed, in interpreting the similarly-worded predecessor to § 2243, the Court explained that the habeas statute endows district courts "'with the largest power to control and direct the form of judgment to be entered in cases brought up before it on *habeas corpus*.'" *Id.* (quoting *In re Bonner*, 151 U.S. 242, 261 (1894)). As our court and others have thus recognized, this broad power includes the authority "to stop a state criminal proceeding" by barring reprosecution where "exceptional circumstances" exist. *Jones v. Cain*, 600 F.3d 527, 542 (5th Cir. 2010); *see also Satterlee v. Wolfenbarger*, 453 F.3d 362, 370 (6th Cir. 2006); *Foster v. Lockhart*, 9 F.3d 722, 727 (8th Cir. 1993); *Capps v. Sullivan*, 13 F.3d 350, 352–53 (10th Cir. 1993).

If ever a case justifiably could be considered to present "exceptional circumstances" barring reprosecution, this is that case. For more than four decades, Albert Woodfox has been solitarily confined to a nine-by-six foot cell for 23 hours each day. During the single hour of the day that Woodfox is permitted outside his compact single cell, he also must remain in solitude. At all times, therefore, Woodfox remains in unmitigated isolation—despite being

16

a model prisoner who is now 68 years old and in frail health suffering from an onslaught of life-shortening conditions including heart disease, kidney disease, diabetes, high blood pressure, and a liver ailment that puts him at a high risk for developing cancer.  Although the State of Louisiana has subjected Woodfox to these harsh conditions for the 1972 murder of Brent Miller, the State has twice tried and twice failed to obtain a constitutionally valid conviction of Woodfox.  In other words, for the vast majority of his life, Woodfox has spent nearly every waking hour in a cramped cell in crushing solitude without a valid conviction to justify what Justice Kennedy recently described as the "terrible price" paid by those suffering "[y]ears on end of near-total isolation." *See Davis v. Ayala*, 135 S. Ct. 2187, 2210 (2015) (Kennedy, J., concurring).  Yet this unique and alarming aspect of Woodfox's case is just one in a startling constellation of extraordinary factors militating in favor of barring Woodfox's reprosecution.  *See Schuster v. Vincent*, 524 F.2d 153, 159 (2d Cir. 1975) (considering the conditions of a habeas petitioner's confinement as one of various factors supporting an unconditional writ of release).

Because "discrimination on the basis of race in the selection of members of a grand jury . . . strikes at the fundamental values of our judicial system and our society as a whole," it has been well-settled for more than a hundred years that a criminal conviction cannot stand if it is based on an indictment by a grand jury that excluded individuals on the basis of their race. *Rose v. Mitchell*, 443 U.S. 545, 556 (1979) (citing *Neal v. Delaware*, 103 U.S. 370 (1880)).  Yet Woodfox was subjected to solitary confinement for almost twenty long years before a state court, after unconscionable delay, finally vacated his first conviction based on the racial discrimination that infected the selection of his first grand jury and his counsel's failure to attempt to quash the indictment on that basis.  By vacating Woodfox's 1973 conviction for that reason, the state

17

court's "[1992] decision put the State on notice that [Woodfox] had been grievously wronged, and required it to act with dispatch to correct these wrongs." *See Schuster*, 524 F.2d at 161. Although the State was given every opportunity to cure this constitutional defect by reprosecuting Woodfox fairly and free from racially discriminatory procedures, the State failed to do so. Like the selection of the first grand jury, the selection of the second grand jury was also tainted by racial discrimination, thus requiring Woodfox's second conviction to be vacated—this time in federal court. *See Woodfox v. Cain*, 772 F.3d 358, 363 (5th Cir. 2014). In the time it took for the State's repeated error to be acknowledged and corrected, Woodfox was forced to endure another twenty years in the throes of solitary confinement.

Now, more than forty-three years after Miller's murder took place, the State seeks yet a third opportunity to prosecute Woodfox for the same 1972 crime. In a case we previously characterized as being "built largely on eyewitness testimony," *Woodfox v. Cain*, 609 F.3d 774, 784 (5th Cir. 2010), the State's only purported eyewitness to the murder itself, Hezekiah Brown, died after the first trial. More than a dozen other witnesses are likewise now deceased. This tally includes at least six of Woodfox's original defense witnesses—two of whom were critical alibi witnesses. In addition to Brown, many of the State's other most important witnesses to testify against Woodfox are dead, including Paul Fobb and Joseph Richey. Importantly, in the four decades since Brown, Fobb and Richey first testified against Woodfox, critical new evidence has emerged that could have been used to call their testimony into question. For example, Brown was allegedly threatened and induced into testifying against Woodfox; Fobb, who testified that he saw Woodfox leaving the crime scene, was both blind in his right eye and suffered from optical damage in his left eye at the time of the crime as reflected in newly discovered

18

medical records; and Richey was provided a transfer to a largely unrestrictive environment in exchange for his damaging testimony against Woodfox. Notwithstanding the materiality of this new evidence, the deaths of these critical prosecution witnesses will prevent Woodfox from cross examining them during a third trial, and the jury likely will be forced to reach a verdict based almost exclusively on listening to stand-ins reading the decades-old testimony of dead men. *See, e.g., Lopez v. Miller*, 915 F. Supp. 2d 373, 434–35 (E.D.N.Y. 2013) (considering the death and unavailability of witnesses at any retrial and the inability of petitioner to otherwise obtain "a fair retrial" as a factor weighing in favor of granting an unconditional writ barring reprosecution); *D'Ambrosio v. Bagley*, 688 F. Supp. 2d 709, 729–30 (N.D. Ohio 2010) (same). In a case that pivots almost exclusively on the credibility of just a few witnesses, the jury will never see those witnesses or observe their demeanor on the stand in a third trial. As for those witnesses who are still alive, memories have inevitably faded in the almost half-century since Miller's 1972 murder. *Morales v. Portuondo*, 165 F. Supp. 2d 601, 612 (S.D.N.Y. 2001) (noting one factor weighing in favor of granting unconditional writ barring reprosecution was that available witnesses would "be required to recall events that occurred 14 years ago"). Physical evidence has also been lost.

In addition to these clear barriers in Woodfox's path to mounting a defense at a third trial forty-three years after the events, the record reflects yet another potential obstacle to securing a fair third trial: the conduct of the State itself. As the district court noted, the State has engaged in "troubling" conduct throughout the history of this case. During Woodfox's second 1998 trial, for instance, a prosecutor improperly took the stand and vouched for the deceased Brown's canned testimony. *See Woodfox*, 609 F.3d at 805 ("[W]e too are troubled by that aspect of [prosecutor] Sinquefield's testimony wherein he

exclaimed how 'proud' he was of Hezekiah Brown and that Brown's testimony 'took courage.'"). In the present proceedings, the State has continued to deploy troubling tactics by, *inter alia*, obtaining an arrest warrant for Woodfox prior to the issuance of our court's mandate and unilaterally transferring him to a parish jail, thereby attempting to "moot" the district court's authority to release Woodfox in light of our decision affirming the grant of habeas relief. Recently surfaced allegations that the State made inflammatory statements to the third grand jury in order to obtain a third indictment create even greater uncertainty as to Woodfox's ability to obtain a fair trial in the State's third prosecution. *See, e.g., D'Ambrosio*, 688 F. Supp.2d at 728–29 (citing the state's "inequitable conduct" during the proceedings as one factor weighing in favor of barring reprosecution). Conceivably, these myriad prejudices to Woodfox in any third trial might be easier to swallow if there were strong evidence of his guilt, but the evidence against him is, at the very best, extremely equivocal. Although there was an abundance of physical evidence available at the crime scene, none of this evidence incriminated Woodfox, and other evidence has emerged since the first trial that casts even further doubt on the State's case against him. *See Morales*, 165 F. Supp. 2d at 609 (citing the "extremely thin" evidence against petitioners as an additional factor weighing in favor of granting an unconditional writ barring reprosecution).

Given the totality of these indisputably "exceptional" circumstances, I cannot say that the district court abused its "broad discretion" under 28 U.S.C. § 2243, *Hilton*, 481 U.S. at 775, in concluding that "law and justice require" a habeas remedy that bars the State from prosecuting Woodfox for a third time. *See Jones*, 600 F.3d at 542 (observing that in "exceptional circumstances" a district court may "exercise its habeas corpus power to stop a state criminal proceeding"). In reaching the opposite conclusion, the majority

not only fails to give the district court "the deference that is the hallmark of abuse-of-discretion review," *General Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997), but also ignores that "[t]he very nature of the writ [of habeas corpus] demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected," *Harris*, 394 U.S. at 291. Clearly, the wrongful harm done to Woodfox, not only as a litigant but also as a human being by his two unconstitutional convictions and his egregious four decades of solitary confinement, cannot be rectified by the usual remedy of reversal and reprosecution. If the ends of "law and justice" set forth in 28 U.S.C. § 2243 do not justify the district court's unconditional writ barring Woodfox's reprosecution, then the Great Writ is but a hollow remedy in this case.

For these reasons, I respectfully dissent.